FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 2 0 2014

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHANA D. DONATHAN            PLAINTIFF

v.      CASE NO. 4:14-CV-615-JM

OAKLEY GRAIN, INC.,
BRUCE OAKLEY, INC., and    This case assigned to District Judge Moody, Jr
DENNIS OAKLEY             and to Magistrate Judge Ray     DEFENDANTS

## COMPLAINT

Comes now the Plaintiff Shana Donathan, and for her Complaint, states:

### I. INTRODUCTION

1. This is an action to redress discrimination and retaliation based on sex in violation of the Equal Pay Act, 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.*

2. Plaintiff Shana Donathan began working for Defendants in the grain department in August of 2010. Donathan worked grading, weighing, loading and unloading grain, as well as training and overseeing new graders and weighers. In addition, she also performed office and clerical work. Although Donathan performed the same tasks as male employees in the grain department, Donathan was discriminated against because she did not receive the same bonuses as the male employees. Just eight days after complaining about gender discrimination to Dennis

Oakley, Donathan was fired. Donathan seeks appropriate declaratory relief, compensatory and punitive damages, costs, attorneys' fees, and all other relief to which she is entitled because of Defendants' unlawful discrimination and retaliation.

## II. JURISDICTION, VENUE, AND PARTIES

3. Plaintiff Shana Donathan is a resident of McGhee, Desha County, Arkansas.

4. Defendant Oakley Grain, Inc. is a domestic corporation with its principal place of business in North Little Rock, Arkansas. Oakley Grain, Inc. was an "employer" of Donathan, as defined by 29 U.S.C. § 203(d); 42 U.S.C. § 2000e(b); and Ark. Code Ann. § 16-123-102(5). Oakley Grain, Inc. may be served through its registered agent, Dennis B. Oakley, 3700 Lincoln Avenue, North Little Rock, Arkansas 72114.

5. Defendant Bruce Oakley, Inc. is a domestic corporation with its principal place of business in North Little Rock, Arkansas. Bruce Oakley, Inc. was an "employer" of Donathan, as defined by 29 U.S.C. § 203(d); 42 U.S.C. § 2000e(b); and Ark. Code Ann. § 16-123-102(5). Bruce Oakley, Inc. may be served through its registered agent, Dennis B. Oakley, 3700 Lincoln Avenue, North Little Rock, Arkansas 72114.

6. Defendant Dennis Oakley is the President of Oakley Grain, Inc. and Bruce Oakley, Inc. At all relevant times, Oakley was an "employer" of Donathan, as defined by 29 U.S.C. § 203(d).

7. At all times herein, Oakley Grain, Inc. and Bruce Oakley, Inc. constituted a single integrated enterprise pursuant to 29 U.S.C. § 203(r).

8.  At all times herein, Oakley Grain, Inc. and Bruce Oakley, Inc. collectively operated a single-integrated enterprise, which is jointly and severally liable for the violations committed by any one of them. The single-integrated enterprise will be referred to as "Oakley Grain" throughout this Complaint.

9.  The jurisdiction of this Court is invoked under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. 2000e-5.

10. The Court has jurisdiction over Donathan's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper within this District and Division pursuant to 28 U.S.C. 1391.

### III. Factual allegations

12. Defendants Oakley Grain have an annual gross volume of sales exceeding $500,000 and have employees engaged in interstate commerce.

13. At all times herein, Oakley Grain has employed 15 or more employees.

14. Dennis Oakley is the President of Oakley Grain. He exercises significant operational control over Oakley Grain. He has the authority to hire and fire employees and promulgates work rules, policies, and conditions of employment for Oakley Grain. Dennis Oakley also determines the rate and methods of payment for employees of Oakley Grain.

15. Plaintiff Shana Donathan began working for Oakley Grain in August 2010 at the Yellow Bend location at 5522 Levee Road North, Arkansas City, Arkansas 71630.

The Yellow Bend location includes a grain elevator and it purchases soybeans, wheat, and corn from farmers.

16. Oakley Grain is in the business of buying grain. According to its website, Oakley has six grain storage facilities in Arkansas: North Little Rock, Pendleton, Yellow Bend, Morrilton, Dardenelle, and Blackwell.

17. Before being hired by Oakley Grain, Donathan met with Charlie Porter, the supervisor of the Yellow Bend location, to discuss the job and pay rate. Donathan and Porter also discussed Donathan's nine years experience working with grain.

18. Donathan was trained on grain grading, weighing, and loading and unloading procedures. She was then tasked with grading and unloading grain, as well as additional grain-related work she was assigned.

19. In addition to her grain related tasks, Donathan also became responsible for various clerical duties, such as handling the paperwork associated with daily grain reports.

20. Because Donathan had extensive experience in grain grading, she was also responsible for training and overseeing new grain graders and weighers as they were hired by Oakley Grain. Donathan trained plant supervisor Doug Wilson in various grain-related tasks, such as how to operate the control boards in the scale house and the procedures for loading, unloading, and transferring grain.

21. Although she performed the same work in the same conditions as her male counterparts, Donathan discovered that Oakley Grain did not pay her the same "safety" and "harvest" bonuses the male graders received. Upon information and belief,

these bonuses ranged between $2,000-4,000. Donathan asked her supervisor, Charlie Porter, why she did not receive the same bonuses as the male graders and was informed that it was because she was labeled as office personnel and was therefore ineligible for the bonuses.

22. Although Donathan was labeled as office personnel, she was still responsible for the same grain-related tasks as her male counterparts, such as grading grain, unloading trucks, as well as climbing to the tops of grain bins and on the grain barges. At times, Donathan was the only employee at the facility, so she was required to perform whatever grain-related tasks arose during that period.

23. After the harvest is over, not all of the grain graders are needed at the Yellow Bend location, and graders are laid off due to lack of work. Donathan, however, was never laid off during this period because she remained employed in her clerical capacity.

24. On January 23, 2014, Donathan sent an email to Oakley Grain owner, Dennis Oakley, in which she expressed concern that she was being discriminated against based on her sex. Specifically, Donathan complained that she performed the same work as the male employees but did not receive the bonuses they did. (*See* Correspondence, attached as Exhibit "A").

25. On January 31, 2014, just eight days after complaining about sex discrimination, Donathan was terminated by Oakley Grain. Although Donathan was purportedly labeled as office personnel, her termination letter stated that she was

"being laid off from [her] position as grader and weigher" due to lack of work. (*See Termination Letter*, attached as Exhibit "B").

26. Just two days after firing Donathan for an alleged lack of work, Oakley Grain rehired Maggie Fletcher, a temp worker trained by Donathan who was laid off the same day as Donathan, to assist on a large delivery that would be delivered to the Yellow Bend facility the following day. Upon information and belief, Fletcher never complained about gender discrimination.

27. After Donathan's termination, Oakley Grain continued to use Donathan's name on weighing and grading tickets. Upon information and belief, this was done because Donathan had a license to work as a weigher and grader.

28. On February 25, 2014, Donathan filed a charge with the Equal Employment Opportunity Commission. On August 20, 2014, the EEOC issued a right-to-sue letter to Donathan. (Exhibit "C").

### IV. CAUSES OF ACTION

#### COUNT 1
#### VIOLATION OF 29 U.S.C. § 206(d) (EQUAL PAY ACT)

29. Donathan restates and incorporates by reference the preceding paragraphs of her Complaint, as if set forth herein verbatim.

30. At all relevant times, Donathan has been entitled to the rights, protections, and benefits provided by the Fair Labor Standards Act.

31. At all relevant times, Donathan has been an "employee" of Oakley Grain and Dennis Oakley, as defined by 29 U.S.C. § 203(e).

32. At all relevant times, Oakley Grain and Dennis Oakley were "employers" of Donathan, as defined by 29 U.S.C. § 203(d).

33. Under the FLSA, it is unlawful for an employer to pay different wages to employees based on the sex of the employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions.

34. Donathan performed the same type of grain-grading work, and under similar conditions, as the male grain graders of Oakley Grain.

35. Oakley Grain and Dennis Oakley violated 29 U.S.C. § 206(d) when they did not pay Donathan, because of her sex, the same safety and harvest bonuses as they did the male employees.

36. Oakley Grain and Dennis Oakley willfully violated 29 U.S.C. § 206(d) by failing to pay Donathan the same bonuses as her male colleagues.

37. Oakley Grain and Dennis Oakley's violations entitle Donathan to compensatory damages calculated as the full amount of the bonuses owed to her.

38. Oakley Grain and Dennis Oakley's violations entitle Donathan to liquidated damages pursuant to 29 U.S.C. § 216(b) of an amount equal to compensatory damages.

39. Donathan is also entitled to an award of her attorneys' fees and court costs pursuant to 29 U.S.C. § 216(b).

COUNT 2
VIOLATION OF 42 U.S.C. § 2000e (DISCRIMINATION)

40. Donathan restates and incorporates by reference the preceding paragraphs of her Complaint, as it set forth herein verbatim.

41. At all relevant times, Donathan has been entitled to the rights, protections, and benefits of Title VII of the Civil Rights Act of 1964.

42. At all relevant times, Donathan has been an "employee" of Oakley Grain, as defined by 42 U.S.C. § 2000e(f).

43. At all relevant times, Oakley Grain has been an "employer" of Donathan, as defined by 42 U.S.C. § 2000e(b).

44. Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to compensation because of the individual's sex.

45. Oakley Grain discriminated against Donathan based on her sex by not paying her the bonuses that it paid to male grain grader employees when she performed the same work as the male employees.

46. Oakley Grain's discriminatory practice was done with malice or reckless indifference to Donathan's federally protected rights.

47. Donathan is entitled to compensatory and punitive damages pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981a.

48. Donathan is also entitled to an award of her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT 3
### VIOLATION OF ARK. CODE ANN. § 16-123-107 (DISCRIMINATION)

49. Donathan restates and incorporates by reference the preceding paragraphs of her Complaint, as if set forth herein verbatim.

50. At all relevant times, Donathan was entitled to the rights, protections, and benefits of the Arkansas Civil Rights Act of 1993.

51. At all relevant times, Donathan has been an "employee" of Oakley Grain as defined by Ark. Code Ann. § 11-123-102(4).

52. At all relevant times, Oakley Grain has been an "employer" of Donathan as defined by Ark. Code Ann. § 11-123-102(5).

53. Under the ACRA, it is unlawful for a person to discriminate against an individual's right to obtain and hold employment based on that individual's sex. The right to "obtain and hold employment" includes the right to be paid for that employment without discrimination on the basis of sex. *Broadus v. O.K. Industries, Inc.*, 226 F.3d 937, 943 (8th Cir. 2000).

54. Oakley Grain violated the ACRA when it discriminated against Donathan based on her sex by not paying her the bonuses that it paid to male grain grader employees when she performed the same work as the male employees.

55. Oakley Grain's discrimination was intentional.

56. Donathan is entitled to compensatory and punitive damages pursuant to Ark. Code Ann. § 16-123-107(c).

57. Donathan is also entitled to an award of her attorneys' fees and costs pursuant to Ark. Code Ann. § 16-123-107(c).

### Count 4
### Violation of 42 U.S.C. § 2000e (Retaliation)

58. Donathan restates and incorporates by reference the preceding paragraphs of her Complaint, as if set forth herein verbatim.

59. Under Title VII, employers are prohibited from taking any adverse employment action against a person covered under the act because that person took action to enforce a protection afforded to them under the act.

60. Donathan was terminated by Oakley Grain just eight days after sending correspondence to Dennis Oakley expressing concern over the fact that she performed the same work as male grain graders but did not receive the safety and harvest bonuses they did.

61. Although Donathan was terminated for "lack of work," two days after her termination Oakley Grain rehired a terminated employee to assist on a large work order the company had.

62. Oakley Grain violated the anti-retaliation provision of Title VII when it terminated Donathan for contacting Dennis Oakley about Oakley Grain's unlawful discrimination based on Donathan's sex.

63. Oakley Grain's discriminatory practice was done with malice or reckless indifference to Donathan's federally protected rights.

64. Donathan is entitled to compensatory and punitive damages pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981a.

65. Donathan is also entitled to an award of her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### COUNT 5
### VIOLATION OF ARK. CODE ANN. § 16-123-107 (RETALIATION)

66. Donathan restates and incorporates by reference the preceding paragraphs of her Complaint, as if set forth herein verbatim.

67. Under the ACRA, it is unlawful for a person to discriminate against an individual because such individual in good faith has opposed an act or practice made unlawful under the Act.

68. Donathan was terminated by Oakley Grain just eight days after sending correspondence to Dennis Oakley expressing concern over the fact that she performed the same work as male grain graders but did not receive the safety and harvest bonuses they did.

69. Although Donathan was terminated for "lack of work," two days after her termination Oakley Grain rehired a terminated employee to assist on a large work order the company had.

70. Oakley Grain and Dennis Oakley violated the anti-retaliation provision of the ACRA when it retaliated against Donathan for contacting Dennis Oakley about Oakley Grain's unlawful discrimination based on Donathan's sex.

71. Oakley Grain and Dennis Oakley's discrimination was intentional.

72. Donathan is entitled to compensatory and punitive damages pursuant to Ark. Code Ann. § 16-123-107(c).

73. Donathan is also entitled to an award of her attorneys' fees and costs pursuant to Ark. Code Ann. § 16-123-107(c).

## COUNT 6
### VIOLATION OF 29 U.S.C. § 215(a)(3) (RETALIATION)

74. Donathan restates and incorporates by reference the preceding paragraphs of her Complaint, as if set forth herein verbatim.

75. Under the FLSA, employers are prohibited from discharging or in any other manner discriminating against any employee because the employee filed a complaint related to the rights afforded to them under the act.

76. Donathan was terminated by Oakley Grain just eight days after sending correspondence to Dennis Oakley expressing concern over the fact that she performed the same work as male grain graders but did not receive the safety and harvest bonuses they did.

77. Although Donathan was terminated for "lack of work," two days after her termination Oakley Grain rehired a terminated employee to assist on a large work order the company had.

78. Oakley Grain and Dennis Oakley violated the anti-retaliation provision of the FLSA when it terminated Donathan for contacting Dennis Oakley about Oakley Grain's unlawful discrimination based on Donathan's sex.

79. Oakley Grain and Dennis Oakley willfully violated 29 U.S.C. § 215(a)(3) by firing her after she complained about the sex discrimination.

80. Oakley Grain and Dennis Oakley's violations entitled Donathan to compensatory damages in the amount of wages lost pursuant to 29 U.S.C. § 216(b).

81. Oakley Grain and Dennis Oakley's violations entitle Donathan to liquidated damages pursuant to 29 U.S.C. § 216(b) of an amount equal to compensatory damages.

82. Donathan is also entitled to an award of her attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

### V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

83. That the Court grant Donathan a declaratory judgment that the actions of Oakley Grain and Dennis Oakley described herein violate her rights as guaranteed by the Equal Pay Act, 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.*

    A.    To award Donathan compensatory and general damages;

    B.    To award Donathan punitive damages;

    C.    To award Donathan her costs and reasonable attorneys' fees;

    D.    To award Donathan pre- and post-judgment interest; and

    E.    To award Donathan such other legal and equitable relief as the Court deems proper and to ensure a complete remedy.

## VI. Prayer For A Jury Trial

Plaintiff hereby prays for a jury trial of all issues herein.

Respectfully submitted,
this 20th day of October, 2014,

*/s/ Timothy A. Steadman*
John T. Holleman - AR Bar #91056
jholleman@johnholleman.net
Maryna O. Jackson - AR Bar #2009111
maryna@johnholleman.net
Timothy A. Steadman – AR Bar #2009113
tim@johnholleman.net
HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

 

# Shana Donathan

**To:** Dennis Oakley
**Subject:** Confused

Good Morning,

Let me start by saying that I am fully aware that what I am about to say is a conversation that is better had in person but due to our schedules and location I am unable to meet with you like I would prefer.
I met with Charlie Porter on August 9, 2010 to discuss a possible job at Oakley in the grain department. When Charlie asked me how much money I was looking for, I responded with $14.00 an hour because I had roughly 9 years experience working with various grain and was confident that I could learn quickly and perform whatever task asked of me. Charlie then told me that you would not allow him to start anybody off at that high of a pay rate but that he could start me at either 9 or 9.50 and if I held true to my word and worked hard that he could get me to the number I asked for within a couple of years. I was not happy about the money but was in need of a job and was willing to take what I could get at the time and work my way up as I have done at every job if given the opportunity. I started working for Oakley August 10, 2010 and I am currently employed with Oakley. There have been employees hired since me with less experience at a higher rate of pay than I was at after two years with Oakley. Before you jump to any conclusions, please let me make it clear that at no point since I have worked for Oakley has money been directly discussed between me and another employee. McGehee is a small town where social media is one of the biggest form of communication. Please understand that this letter is not intended to make threats or down grade your company, I am simply at a point where I can no longer come to work and give 100% knowing that others around me doing the same job are better able to provide for their family than I am. When I started on August 10, 2010 my training in the grain department began. I was trained on the grading procedures as well as the weighing and unloading procedures. Shortly after I started the person taking care of HR as well as the paperwork involved with the daily grain reports,tickets etc.. quit and that task became mine as well. When the next harvest arrived it was my responsibility to train and oversee new graders and weighers as well as the task I was currently doing. I approached Charlie about the issue of safety checks when I noticed that everyone was receiving one except for me. Charlie then informed me that he had discussed the issue with you and your response was that because I was listed as office personnel I was not eligible for a safety check and there would be no exception made in my case because you do not believe in doing for one and not everybody. I understand your predicament with the volume of employees you have but yellow bend is a smaller facility and I am not in a position where I can simply stay behind a desk because at times, I am the only employee here. I grade and unload trucks and whatever else is asked of me. I see no difference in my position and the ones performed by the grain department at Pendleton for example except the fact that I am a female. I do not say that last part lightly because I have made it abundantly clear that on past jobs I have operated a tractor, forklift, broom etc... I am not afraid of water nor heights and have made trips to the tops of these bins on numerous occasions as well as on the barge. I am not afraid to work outside or get dirty. I do not wish to speak poorly of Doug Wilson, our current plant supervisor but even he will tell you, when he started it was me who trained him on the control boards in the scale house as well as the procedures of loading, unloading, transferring grain, etc... I understand due to construction and the issues with mixed grain, yellow bend has not gained in the last couple of years, but I ask you what exactly that had to do with me? We took in a record number of grain this last year with minimal mistakes, I understand how money is made as far discounts on the grain and blending of the grain correctly on the barges so that you get the best quality but it is beyond my control as to what quality of grain we take in and how we blend the grain for the barges. Every high moisture, high damage, high FM load that we take in is approved by Charlie Porter himself before it is dumped. I am hurt by the fact that I have poured my heart and soul into this job, learning and doing anything that was asked of me yet have been skipped two years in a row when it came time for bonuses. Nobody and I repeat nobody employed by Oakley told me about the harvest bonus, someone who knew about them assumed that I had also gotten one because I also work in the grain department and had been with Oakley for almost four years. I apologize for unloading so much on you at once, I know that I should have said something years ago but out of fear for my job and the hope that it would improve I kept my mouth shut. I will say this, I love my job and I'm good at it so I hope this letter doesn't result in my dismissal but I had to at least voice my

Shana Donathan vs. Oakley Grain, Inc.
Charge No.: 493-2014-00611

22



EXHIBIT A

confusion and hurt to you in hopes that you can shed some light on the subject before I get to the point where I simply don't care because I have never been that person and I don't want to see that happen.

Thank you,

Shana Donathan



**BRUCE**
**O·A·K·L·E·Y INC.**
GRAIN DIVISION

*SHANA DONATHAN*
*PHONE 870-877-2000*
*FAX    870-877-2001*



RECEIVED
FEB 25 2014

01-23-14

2

Shana Donathan vs. Oakley Grain, Inc.
Charge No.: 493-2014-00611

23

Dear Shana:

It is with regret that I inform you are being laid off from your position as grader and weighier effective January 31 2014. Lack of work necessitates this layoff. We hope you will be able to help again during harvest.

I wish to assure you that your lay-off is not related to your job performance, I anticipate this lay-off changing in the foreseeable future. We appreciate your contribution to the company and i regret sincerely that our current situation has required this notice.

My best wishes for your future endeavors.
   Charlie Porter Grain Mgr.



Cc: Sadie Ringgold

**EXHIBIT B**

Shana Donathan vs. Oakley Grain, Inc.
Charge No.: 493-2014-00611

24

| EEOC Form 161 (11/09) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: Shana D. Donathan<br>238 Crooked Bayou<br>McGehee, AR 71654 | From: Little Rock Area Office<br>820 Louisiana<br>Suite 200<br>Little Rock, AR 72201 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2014-00611 | Rodney E. Phillips,<br>Investigator | (501) 324-6473 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_William A. Cash, Jr. / R.P._         08-20-2014

Enclosures(s)    William A. Cash, Jr.,    (Date Mailed)
                 Area Office Director

cc:
| Lisa Hicks<br>Payroll Manager<br>BRUCE OAKLEY INC.<br>P. O. Box 17880<br>North Little Rock, AR 72117 | Penny Collins Choate<br>Attorney<br>CHOATE LAW FIRM<br>402 E. Race Ave.<br>Searcy, AR 72143 | Tim Steadman<br>Attorney<br>HOLLEMAN & ASSOCIATES<br>1008 W. 2nd Street<br>Little Rock, AR 72201 |
|---|---|---|

**EXHIBIT C**